**In re Susan COGLIANO, Debtor.**

**Susan Cogliano, Appellant,**

v.

**Karl T. Anderson, Chapter 7 Trustee; Polis & Associates, Appellees.**

**BAP Nos. CC–05–1061–BMOT, CC–05–1202–BMOT.**

**Bankruptcy No. RS 96–28188 MG.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 23, 2006.

Filed Sept. 12, 2006.

---

Daniel C. Sever, Cathedral, CA, for Appellant.

Thomas J. Polis, Polis & Associates, Irvine, CA, for Appellees.

Before: BRANDT, MONTALI and TCHAIKOVSKY,[1] Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

After reopening a case that had been closed for three years, the chapter 7[2] trustee obtained an order for turnover of funds in debtor's individual retirement account ("IRA") which were derived from her former spouse's pension. Six months later, debtor amended her schedules to exempt the IRA. After a contested hearing, the bankruptcy court sustained the trustee's objection to the exemption and again ordered turnover of the funds "so that it

---

**1.** Hon. Leslie Tchaikovsky, Bankruptcy Judge for the Northern District of California, sitting by designation.

**2.** Absent contrary indication, all "Code," chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 prior to its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23, as the case

from which these appeals arise was filed before its effective date (generally 17 October 2005).

All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "FRCP" references are to the Federal Rules of Civil Procedure. All "CCP" references are to the California Code of Civil Procedure.

would not be dissipated." Debtor's motion for reconsideration was denied; she did not appeal. Debtor filed a second amended exemption claim, in which she argued that the IRA was not property of the estate, but that if it was, it was exempt. The trustee again objected; the court sustained the objection orally in 2002. The order was not entered until 2005. Debtor appealed.

Meanwhile, trustee and his counsel applied for fees, to which debtor objected, arguing the services did not benefit the estate. The bankruptcy court approved the final fee application, and the debtor appealed.

Concluding that neither claim nor issue preclusion bars debtor's assertion in her second claim of exemption that the IRA is not property of the estate, but that claim preclusion bars her assertion that it is exempt if it is property of the estate, we REVERSE the first order (exemption), VACATE the second (fees), and REMAND.

## I. FACTS

*Background.* Three years after her divorce from Peyton Frazier Smythe in 1993, Susan Cogliano filed her pro se chapter 7 petition, scheduling less than $50,000 in unsecured debt. She was granted a discharge, and her case was closed in February 1997.

Smythe participated in a "defined benefit plan" through his employer, Texaco Oil Company. Section 21.04 of the plan provided:

**Restrictions on Alienation and Assignment.** No member, Retired member, [or] Beneficiary ... will have the right to assign, [or] transfer ... her interest in any payments under this Plan, ... and payments under this Plan will not in any way be subject to any legal process to levy upon or attach the same for payment of any claim against any ... Beneficiary....

The decree of divorce awarded Cogliano an interest in Smythe's pension in small monthly amounts. The divorce decree also provided that, should Smythe elect a lump sum distribution, she would be entitled to 50 percent of the distribution. Cogliano's personal property schedule B reflected the monthly payment, although she claimed she had never received her monthly share and never expected she would, and she scheduled "spousal support" of $15,794.61 owing.

When she filed her bankruptcy petition, Cogliano did not know that Smythe had already retired in 1995 and had elected a lump sum distribution, triggering her entitlement to a one-half share. In 1998, when she learned of these facts, Cogliano sought a modification of the divorce decree and initiated judgment enforcement proceedings. The state court modified the decree, and entered a corrected Qualified Domestic Relations Order ("QDRO") awarding Cogliano a proportional interest.

The exact form in which Smythe held the funds after receiving distribution from the Texaco pension plan, and the nature of any restrictions on alienation or transfer, are not clear from the excerpts of record provided us. Rule 8009(b). Paragraph 4 of Cogliano's Declaration in Response to Order to Show Cause ... dated 10 December 2000 indicated that Smythe held them in an IRA. But at the hearing of Cogliano's motion for reconsideration, trustee's counsel stated he had never been provided the substantiating documents he had requested. Transcript, 4 September 2001, at 16–17.

Cogliano finally obtained a state court order in California, and levied the sum of $64,937.11 from Smythe's account. She opened an individual retirement rollover

account at Charles Schwab (the "IRA") in July 2000, and transferred the levied funds there in October 2000. Meanwhile, upon learning of debtor's bankruptcy, Smythe's attorney contacted former chapter 7 trustee Karl Anderson ("trustee") to inform him about the IRA.

The trustee moved to reopen Cogliano's case under § 350 and to compel turnover of the IRA under § 542, alleging that Cogliano had concealed the account. Cogliano disclaimed any concealment, asserting she either had no interest, or at least knew of none, on the petition date. The Hon. David Naugle granted the contested motion to compel turnover, "without prejudice to any and all rights concerning the Debtor's exempt interest, if any, in the monies turned over to the Trustee." Order Granting Motion to Compel Turnover, Without Prejudice to Debtor's Exemption Rights, entered 29 December 2000. Cogliano eventually turned over $38,000, and the trustee later moved to abandon any interest the estate had in the balance.

*First Amended Schedules.* Approximately six months later, debtor filed amended schedules B, personal property, listing the $64,000 IRA, and C, exempt property, claiming it as fully exempt under CCP § 703.140(b)(10)(E). The trustee objected, contending that the IRA had been concealed and the exemption should be denied (citing § 522(g)(1)(B)) and again sought turnover. The court, without findings or conclusions of law, sustained the trustee's objection to the amended claim of exemptions, and granted the trustee's motion for turnover and an accounting. Transcript, 24 July 2001, at 118; Order Granting ... Trustee's Motion Objecting to ... Amended Schedule C, ..., entered

26 July 2001; Amended Order, 6 August 2001.

Debtor moved for reconsideration and sought sanctions, which the bankruptcy court denied without findings or conclusions, entering an order 4 September 2001. The court also denied the trustee's counter-motion seeking to have debtor declared a vexatious litigant. There were no appeals.

*Second Amended Schedules.* In June 2002, Cogliano, now represented by counsel, filed her second amended schedules B and C, again listing her IRA and claiming it exempt under the same provision, CCP § 703. 140(b)(10)(E). Both schedules provided much more detail, and now asserted that the asset was an ERISA-qualified [3] pension and was thus excluded from the definition of property of the estate under § 541. The "description of property" in both schedules read:

> Vested interest in former husband's Peyton Smythe's ERISA-qualified defined benefit pension plan arising out of Mr. Smythe's employment with Texaco. As of date of filing, debtor's known interest in the pension has a value of $1,000.17 ...; in addition, debtor has an interest in the pension of unknown value, depending on if and when Peyton Smythe elects to take a lump-sum distribution....
>
> The foregoing pension benefits are not "property of the estate" for purposes of the Bankruptcy Code but are nevertheless identified in these schedules for disclosure purposes[.]

The trustee again objected and argued the issue was res judicata. Cogliano argued she was not precluded from amending her schedules, pointed out that there

---

**3.** 29 U.S.C. § 1001 et seq.; *see Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).

had been no finding of concealment, and explicated the argument that the IRA was not property of the estate. Without briefing on whether the IRA was estate property under § 541(c)(2), and without deciding if that issue was precluded under any theory, the court denied the second amended claim of exemptions, remarking at the conclusion of hearing:

> And we don't disagree that the standard of *Patterson v. Shumate* is [that] ERISA qualified plans are not imputable [includable?] within the estate as a general rule, and but for concealment in this case, probably [there would] be a little different viewpoint.

Transcript, 10 September 2002 at 10. There had been no previous finding of concealment, nor was any made at or after the hearing.

Trustee's counsel stated he would lodge an order, *Id.* at 9, but did not. In early 2005, debtor moved for entry of the order; the final order was entered 2 May 2005. Debtor appealed. (No. CC–05–1202).

In the lengthy interim period, trustee again moved for turnover in late 2002, but ultimately withdrew his motion. Judge Naugle recused himself, and the Hon. Mitchel Goldberg replaced him. At hearing on the trustee's counsel's interim fee application, and apparently without the benefit of transcripts of the earlier hearings, he queried whether the property of the estate issue had been decided and requested briefing, but then concluded that Judge Naugle's ruling on the claim of exemption was final:

> THE COURT: This [December 2000] order was very strong about turning over everything ... [b]ut it doesn't say he made a finding that this is property of the estate. Just that it would be turned over *so that it would not be dissipated.* Turnover does not neces-

sarily constitute a finding that it must be property of the estate.

> . . . .

> ... If she filed requests for exemptions, they were denied. That's done with. I'm not going to change Judge Naugle's ruling on that.

> But if there is not a specific finding under [§ 541], what is and what is not property of the estate ... *I want to see if there has been a specific ruling based on hopefully [the divorce court judge's] order in 2000 that triggered it, which became a final order, apparently. How Judge Naugle dealt with the facts to make a determination [that it] was property of the estate* because, fill in the blank [sic].

> It does not qualify under the exemption clauses. It does not qualify under the fact that Spendthrift Trusts are not property of the estate, if it's a [properly] qualified Spendthrift [trust].

Transcript, 30 January 2003 at 16–17 (emphasis added).

Thereafter, in September 2003, Cogliano moved to compel the trustee to turn over the IRA to her; that motion was denied, and an order entered on 16 December 2003. It was not appealed; none of the papers are in the record provided to us.

*Final Fee Application.* In mid–2004, trustee filed his final report and fee application. At the hearing, the court referred back to the property of the estate issue, unambiguously but erroneously presuming that it had been resolved:

> [T]his case centers around one major theory. [Whether] these funds that the debtor received from her ex-husband who decided to report all the issues, Pension Fund of Texaco, constitute property of the estate or not. The trustee made the business decision to argue that it constituted this QUADRO [sic]

fund, that it somehow constituted property [of] the estate or the way it was rolled over. . . . It's not my job to review it. Whatever it was the trustee [argued] it was property of the estate.

. . . .

*I cannot unwind the ultimate finding* that exists and which is a final finding *that this property was property of the estate.*

Transcript, 15 December 2004 at 4–5 (emphasis added).

The bankruptcy court entered an order allowing fees and costs of $47,309.36 to trustee's counsel, Polis & Associates, and to trustee of $5133.21. First Amended Stipulation by and Among Administrative Court Approved Professionals, 27 January 2005. Administrative creditors took a 44% pro rata discount on their fees, which left nothing for unsecured creditors. Debtor appealed (No. CC–05–1061).

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(a), (b)(1), and (b)(2)(A), (B) and (E). We do under 28 U.S.C. § 158(c).

## III. ISSUES

1. After a claim of exemption has been denied, do the doctrines of preclusion bar a debtor from later asserting that, under § 541(c)(2), the asset was not "property of the estate"?

2. Do those doctrines bar a second claim that the same asset is exempt?

3. Did the bankruptcy court abuse its discretion in awarding fees and costs to trustee and trustee's counsel under § 330?

## IV. STANDARDS OF REVIEW

■ A. We review conclusions of law and questions of statutory interpretation, including construction of the Code, de novo, and findings of fact for clear error. Rule 8013; *In re Mednet,* 251 B.R. 103, 106 (9th Cir. BAP 2000). A factual finding is clearly erroneous if the appellate court, after reviewing the record, has a firm and definite conviction that a mistake has been committed. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ B. Whether property is included in a bankruptcy estate is a question of law, subject to de novo review. *In re Kim,* 257 B.R. 680, 684 (9th Cir. BAP 2000), *aff'd,* 35 Fed.Appx. 592 (9th Cir.2002).

■ C. We review the determination of whether issue or claim preclusion applies "de novo as mixed questions of law and fact in which legal questions predominate." *In re George,* 318 B.R. 729, 732–33 (9th Cir. BAP 2004), *aff'd,* 144 Fed.Appx. 636 (9th Cir.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1068, 163 L.Ed.2d 861 (2006).

■ D. We also review exemption determinations de novo. *In re Goswami,* 304 B.R. 386, 389 (9th Cir. BAP 2003).

■ E. We review a bankruptcy court's award of compensation for abuse of discretion. *In re Triple Star Welding, Inc.,* 324 B.R. 778, 788 (9th Cir. BAP 2005); *In re Riverside–Linden Inv. Co.,* 925 F.2d 320, 322 (9th Cir.1991); *In re Mehdipour,* 202 B.R. 474, 478 (9th Cir. BAP 1996), *aff'd,* 139 F.3d 1303 (9th Cir. 1998). A court abuses its discretion if it bases its ruling on either an erroneous view of the law or a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

## V. DISCUSSION

### A. Property of the estate?

■ Upon filing, all of Cogliano's legal and equitable interests became part of

the estate, subject to her exemption rights. §§ 541(a) and 522. A debtor's legal and equitable interests on the petition date are determined according to state law. *Butner v. United States*, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

■ The Supreme Court held in *Patterson v. Shumate*, that § 541(c)(2) "entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a transfer restriction enforceable under any relevant nonbankruptcy law." 504 U.S. at 758, 112 S.Ct. 2242. Under that section, "an anti-alienation provision in a valid spendthrift trust created under state law is an enforceable 'restriction on the transfer of a beneficial interest of the debtor' and thus serves to exclude the trust corpus from the bankruptcy estate." *In re Moses*, 167 F.3d 470, 473 (9th Cir.1999) (citation omitted). And the Ninth Circuit made clear in *In re Rains*, 428 F.3d 893, 905–06 (9th Cir.2005) that exclusion of a debtor's interest in an ERISA-qualified plan is permissive, not mandatory.

A debtor may claim as exempt certain property from the estate under either state or federal law, § 522(b), and § 522(*l*) sets forth the procedure for claiming exemptions and objecting to those claimed. But neither the Code nor the Rules establish a procedure for claiming that property is excluded from the estate, nor do the official forms provide a clear way to identify such property, but to assert its exclusion from the estate, to preclude a later accusation of concealment.

California has "opted out" of the federal exemption scheme, so Cogliano could claim only California exemptions. *See Kim*, 257 B.R. at 684. A California debtor may elect to exempt her right to receive:

[a] payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor....

CCP § 703.140(b)(10)(E); *In re Talmadge*, 832 F.2d 1120, 1122–23 (9th Cir.1987).

In this appeal Cogliano argues that, even though she amended her schedules twice expressly to claim the exemption, she need not have done so because her IRA was not property of the estate under § 541.

■ The basis for the bankruptcy court's order denying her first amended exemption claim was unclear. The court did not analyze whether the IRA was a qualified plan which is exempt if it meets the requirements of California law; rather, her alleged concealment appears to have been determinative. Concealment may be a ground to disallow a claimed exemption, as § 522(g)(1)(B) provides in part that the debtor may exempt property "if ... the debtor did not conceal such property," but, as noted above, no such finding was made. *See In re Lopez*, 283 B.R. 22, 30 (9th Cir. BAP 2002). But the Code is silent on the consequences of non-disclosure of property which is not property of the estate.

■ The order denying the exemption Cogliano claimed in her first amended schedules became final after reconsideration was denied in October 2001 and was not appealed. If that order were on appeal with the record we have, reversal would seem appropriate: a disputed exemption claim is a contested matter, *In re Garner*, 246 B.R. 617, 623 (9th Cir. BAP 2000), Rules 4003(b) and 9014 require findings of fact and the record discloses none.

■ Cogliano's second amended schedule C refers to the same property claimed exempt in her first amended schedule C, although it is described somewhat differ-

ently. Schedules may be amended to change claimed exemptions, or to add omitted assets, at any time before the case is closed, Rule 1009(a), and is allowed in the absence of prejudice or bad faith. *See Goswami*, 304 B.R. at 393–94. But an exemption claim does not merit a fresh determination simply by the "clarification" or variation of description in an amended schedule C.

Although the trustee argues bad faith and perhaps prejudice, none has been established (at least the trustee points to no such finding by the bankruptcy court), so the dispositive question in this appeal is whether the denial of Cogliano's first amended claim of exemption precludes her assertion in her second amended claim of exemption that the IRA was not property of the estate. If not, the next question is whether it is nevertheless exempt under the California statute.

Although we refer to "her IRA" or "the IRA" for ease of reference, our precise focus is on Cogliano's interest on her petition date in the funds which she later recovered from Smythe and placed in her IRA, or in the account in which those funds were then held.

## B. Preclusion?

■■■ We begin with the observation that:

Whether Debtor's [pension] plans are excluded from the estate is a question that should be addressed by the bankruptcy court in the first instance. The exemption question arises only if the plans are first determined to be property of the estate.... *In fact, if the plans are not property of the estate, the bankruptcy court should not make a decision on the exemption question.*

*Moses*, 167 F.3d at 474 (emphasis added) (quoting *In re Spirtos*, 992 F.2d 1004, 1007 (9th Cir.1993)).

■■■ The Ninth Circuit has concisely framed the preclusion concepts:

Generally, the preclusive effect of a former adjudication is referred to as "res judicata." The doctrine of res judicata includes two distinct types of preclusion, claim preclusion and issue preclusion. Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

*Robi v. Five Platters, Inc.*, 838 F.2d 318, 321–322 (9th Cir.1988) (quotations, citations, and footnote omitted).

■■■ The burden is on the trustee, who asserts preclusion, to establish the necessary elements. *In re Khaligh*, 338 B.R. 817, 825 (9th Cir. BAP 2006).

### 1. *Issue Preclusion*

■■■ Issue preclusion:

[P]revents relitigation of all "issues of fact or law that were actually litigated and necessarily decided" in a prior proceeding.... The issue must have been "actually decided" after a "full and fair opportunity" for litigation.

*Robi*, 838 F.2d at 322 (citations omitted); *see also* Christopher Klein et al., *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr.L.J. 839, 852–58 (2005) ("Klein et al., *Principles*").

We have recently held:

Six basic elements must be satisfied before issue preclusion will be applied. Five of the elements are described as "threshold" requirements: (1) identical issue; (2) actually litigated in the former

proceeding; (3) necessarily decided in the former proceeding; (4) former decision final and on the merits; and (5) party against whom preclusion sought either the same, or in privity with, party in former proceeding.

The sixth element is a mandatory "additional" inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy.

*Khaligh*, 338 B.R. at 824–25 (citation and footnote omitted).

Four of the five threshold elements of issue preclusion are met here; only the second, whether the estate property question was actually litigated in the objection to the first amended claim, is in contention. Clearly, at the time of the interim fee hearing, the bankruptcy court believed it had been decided by the first judge: "I cannot unwind the ultimate finding that exists and which is a final finding that this property was property of the estate." Transcript, 15 December 2004, at 5.

■■■■ But we are not so sure: despite Cogliano pointing out the lack of an explicit finding on the issue, transcript, 30 January 2003, at 15–19, the trustee has never identified one, or any hearing at which the issue was actually addressed on the merits. Nor has he done so on appeal, and it is his burden as appellee to assure that the record is sufficiently complete to defend the bankruptcy court's ruling. *In re Kyle*, 317 B.R. 390, 394 (9th Cir. BAP 2004), *aff'd*, 170 Fed.Appx. 457 (9th Cir. 2006). Further, he must specifically reference relevant portions of the record in his brief, as opposing parties and the court are not obliged to search the entire record unaided. Rule 8010(a)(1)(D); *see Dela Rosa v. Scottsdale Mem'l Health Sys., Inc.*, 136 F.3d 1241, 1243–44 (9th Cir.1998) and *Mitchel v. General Elec. Co.*, 689 F.2d 877, 878–79 (9th Cir.1982). And we are

entitled to presume from the absence of support in the excerpts that the record does not support the trustee's position. *In re Gionis*, 170 B.R. 675, 680–81 (9th Cir. BAP 1994), *aff'd*, 92 F.3d 1192 (9th Cir. 1996) (table); *In re McCarthy*, 230 B.R. 414, 417 (9th Cir. BAP 1999).

As noted, we review determinations of the applicability of preclusion de novo. *George*, 318 B.R. at 732–33. As there has been no showing that the property of the estate issue was in fact litigated, there is no issue preclusion.

### 2. *Claim Preclusion*

■■■■ But the doctrine of claim preclusion is distinct: "[i]ssue preclusion bars relitigation only of issues that have been actually litigated, while the broader brush of claim preclusion may also bar a cause of action that never has been litigated," *George*, 318 B.R. at 733, that is, another action on the same "claim." For these purposes, a "claim" is a plaintiff's right to pursue remedies "with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Restatement (Second) of Judgments ("Restatement")* § 24(1) (1982). When there has been a final judgment on a part of a "claim," the right to obtain remedies against the estate respecting that claim is extinguished. See Klein et al., *Principles*, at 849, and *George*, 318 B.R. at 735–37. The order denying Cogliano's first amended claim of exemption was a final order in a contested matter: functionally, a judgment. Rules 9014 and 7054.

■■■ Because Cogliano could have overcome the objection to her first amended exemption claim by establishing that the IRA was not part of the estate under § 541(c)(2), the property of the estate question was, in preclusion analysis, part

of the same transaction or series of connected transactions.

■ Likewise, were the IRA not property of the estate, Cogliano would have had a complete defense to the trustee's motions for turnover of the same property. With several exceptions not here applicable, under § 542, a trustee may seek turnover only of estate property. Section 542(a) provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

As "entity" includes "person" and "person" includes "individual," § 101(15) and (41), it follows that a debtor must, under § 542, "turn over to the trustee property of the estate, even if the debtor may exempt that property." *In re Carlsen*, 63 B.R. 706, 710 (Bankr.C.D.Cal.1986) (IRS must turn over garnished funds). The reason is, of course, that claims of exemption do not always succeed. The bankruptcy court's 29 December 2000 ruling requiring turnover "without prejudice to ... debtor's exempt interest, if any ..." is consistent with this understanding.

■ And defenses which could have been raised, but were not, are barred. *Robi*, 838 F.2d at 322; *Restatement* § 17; Klein et al., *Principles* at 847. Thus, if claim preclusion must be applied, Cogliano cannot successfully assert in her second claim of exemption that the IRA was not property of the estate.

Restatement § 26(1) sets out exceptions to claim preclusion:

> When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> . . . .
>
> (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; or . . . .

■ That is the situation here: with an exception not applicable in this context, Rule 7001(2) requires an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property." As we have recently noted, in the context of § 362 stay relief (a contested matter):

> [T]he determination of interests in property requires an adversary proceeding. [Rule] 7001(2). Thus, in a relief from stay motion that is a Rule 9014 contested matter, not a Rule 7001 adversary proceeding, the bankruptcy court is not authorized by the rules of procedure to enter an "in rem" order that determines interests in property.
>
> . . . .
>
> Here, however, there is no adversary proceeding and no adversary proceeding judgment that might have claim or issue preclusive effect. It follows that the ... order ... is not conclusive as to interests in the property.

*In re Johnson,* 346 B.R. 190, 195–96 (9th Cir. BAP 2006) (citation omitted). And we have held that the determination of the validity of a lien without an adversary proceeding is "void." *In re Colortran, Inc.,* 218 B.R. 507, 510–511 (9th Cir. BAP 1997). Although we left open the question of whether property of the estate could be determined in a contested matter in *In re Popp,* 323 B.R. 260, 269 n. 14 (9th Cir. BAP 2005) (§ 363 sale), we now conclude that the bankruptcy court lacked authority to determine whether the IRA was property of the estate in deciding the trustee's objections to Cogliano's claims of exemption, or in his turnover motion, for nothing in the record suggested any waiver by Cogliano, *see In re Boni,* 240 B.R. 381, 385–86 (9th Cir.BAP1999) (dischargeability), and giving claim preclusive effect would eviscerate the possible harmlessness of the error. *See In re Munoz,* 287 B.R. 546, 551 (9th Cir. BAP 2002) (declaratory judgment re discharge injunction).

Thus, the Restatement § 26(1)(c) exception pertains, and there is no claim preclusion. Accordingly, we will reverse in No. CC–05–1202 and remand for determination of whether on her petition date, the funds Cogliano recovered from Smythe were in a plan or trust subject to an enforceable restraint on transfer or alienation, and thus excludable from the bankruptcy estate. If so, the next question is whether scheduling of the IRA in her first amended schedules was sufficient to render it property of the estate if it was not otherwise excluded. *See Rains,* 428 F.3d at 906 (by settlement ceding claim of exemption of a retirement plan, debtor "necessarily agreed to include the retirement plan funds in the bankruptcy estate").

## C. Exempt?

Even if the IRA is property of the estate, the question of whether Cogliano may exempt it remains.

■ There is no issue preclusion because the excerpts of record do not show that the eligibility of the IRA for exemption under California's statute has ever actually been litigated. The record provided does not disclose what was actually litigated on the trustee's objection to Cogliano's first claim of exemption, but as he raised both concealment and ineligibility, the latter was not necessarily decided.

■ But claim preclusion analysis differs. Rightly or not, the court on 26 July 2001 entered an order sustaining the trustee's objection to Cogliano's first amended claim of exemption, and an amended order on 6 August 2001. Cogliano's motion to reconsider was also denied. She appealed none of these orders.

■ Objections to claims of exemption need not be adversary proceedings: Rule 4003(b) only prescribes the filing of objections within the specified time, and delivery of copies to the interested parties, and 4003(c) mandates "[a]fter hearing on notice, the court shall determine the issues presented by the objections." Rather, a claim objection is a contested matter, *Garner,* 246 B.R. at 623, so the bankruptcy court had authority to decide the eligibility of the IRA for exemption on hearing the objection to Cogliano's first amended claim of exemption.

■ The question then becomes whether there is any other reason claim preclusion does not bar Cogliano's second amended claim of exemption. She suggests bias or personal animosity on the part of the court, opening brief, at 21–23, but with no real support: just surmise, based on the timing of the reversal of another ruling in her ex-husband's adversary proceeding against her, and the judge's subsequent recusal.

Cogliano argues "it is reasonable to infer that [the court's] judgment *may have been* similarly clouded and that he *may have* abused his discretion ...," opening brief at 23 (emphasis added), which is insufficient "clearly and convincingly [to show] that the policies favoring preclusion ... are overcome for an extraordinary reason ... [,]" *Restatement*, § 26(1)(f), even had Cogliano followed the procedures *Restatement* § 26(2) requires, laid out in §§ 78–82. As here pertinent, those sections call for seeking relief by motion or by independent action to restrain enforcement of the judgment, with appropriate pleading and proof. Cogliano did so, or attempted to, in any fashion. We decline to find a sufficiently extraordinary reason on the basis of conjecture.

Accordingly, claim preclusion will preclude Cogliano's claim of exemption if she does not succeed in establishing that her interest in the funds which she recovered from Smythe and placed in the IRA, or her interest in the account in which those funds were held on that date was not property of the estate.

If the bankruptcy court finds that the IRA is property of the estate, it is not exempt.

### D. Fee Application Appeal (No. CC–05–1061)

The question under § 330(a)(4)(A)(ii) is whether the services provided by trustee and his counsel were "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." Cogliano seeks reversal of the fee award and a denial of all the fees, accusing the trustee of deliberately misleading the court about the nature of the asset and mislabeling it as a "concealed securities account," and argues that the trustee and counsel generated substantial fees (almost as much as the total unsecured liabilities) to exert control over an asset which is not property of the estate or is exempt.

The bankruptcy court did not make findings on these matters, and instead premised the fee award on the trustee having prevailed on his substantive objections to the claims of exemption.

We will vacate the award and remand for redetermination once the property of the estate issue is resolved, noting that one of the considerations is whether the fees sought are for work reasonably anticipated to be necessary and beneficial to the estate at the time rendered. *In re Strand*, 375 F.3d 854, 860 (9th Cir.2004). The trustee could early on have sought explicit rulings on the property of the estate issue, using the required procedure, and documented that ruling with a promptly-presented judgement, which would have obviated much of the litigation for which he now seeks fees, so some skepticism will be in order.

### VI. CONCLUSION

Summing up, when the question of whether property is part of the estate is in controversy, Rule 7001(2) requires an adversary proceeding, absent waiver or harmless error, and the determination of that question by motion, while it may have issue preclusive effect, does not have claim preclusive effect. Here it has neither.

We REVERSE and REMAND in No. CC–05–1202 for that determination. If the IRA is property of the estate, Cogliano's claim of exemption is precluded.

We VACATE the fee award in No. CC–05–1061 and REMAND.